UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 1 of 10 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KELLY DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS [72]**

Before the Court is Defendant Snap, Inc.'s ("Snap") motion to dismiss ("MTD") Plaintiffs' First Amended Complaint ("FAC"). [Doc. ## 67 (FAC), 72 (MTD).] The MTD is fully briefed. [Doc. ## 74 ("Opp."), 75 ("Reply").][1]  For the reasons stated below, the MTD is **GRANTED**.

## I.
## BACKGROUND[2]

The Court described the facts of this case in its February 3, 2023 Order on Snap's first motion to dismiss. [*See* Doc. # 66 ("First MTD Order").] The factual allegations are largely the same, so the Court incorporates by reference its previous description of the factual and procedural background.

In addition to the allegations in the original Complaint, Plaintiffs allege in relevant part that they each "paid legal consideration" for their ability to use Snapchat, because Snap's Terms of Service provide that "[Snapchat] may contain advertisements. In consideration for Snap Inc. letting you access and use the services, You agree that we, our affiliates, and our third-party partners may place advertising on [Snapchat]." FAC ¶¶ 24, 54; *see also id.*, Ex. 3 at 4 [Doc. # 67-3]. Plaintiffs allege that Snap's Terms of Service prohibit using Snapchat in a way that "bullies, harasses, or intimidates," and prohibit creating more than one account. *Id.* at ¶ 104. Plaintiffs also point to provisions in the Privacy Policy that explain how Snapchat uses personal information to verify users' identities and to comply with court orders. *Id.* at ¶ 105. Snap's

---

[1] Snap also filed a Notice of Supplemental Authority. [Doc. # 77.] The Court does not find the cases cited by Snap relevant to deciding this motion.

[2] Citations to the record in this Order are to the CM/ECF pagination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
|---|---|---|---|
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | | Page   2 of 10 |

Community Guidelines provide that Snapchat has "zero tolerance for bullying or harassment of any kind." *Id.* at ¶ 108.

In the FAC, Plaintiffs assert claims for: (1) negligence; (2) violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2702 *et seq.*; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.,* Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and (4) negligent and intentional misrepresentation.

## II.
## LEGAL STANDARD

The Court articulated the standards for Rule 12(b)(6) motions to dismiss and for leave to amend in its prior order, and need not repeat them here. *See* First MTD Order.

## III.
## DISCUSSION

**A.     Section 230**

Snap argues once again that Plaintiffs' claims are barred by the Communications Decency Act ("CDA"). As before, Plaintiffs disclaim any intent to hold Snap liable for messages sent by Joshi, or for its failure to block Joshi. *See* Opp. at 24; *see also* First MTD Ord. at 4. Still, because Snap contends that Plaintiffs are merely engaging in creative pleading to avoid the immunity provided by the CDA, the Court will address Snap's contention.

Section 230 of the CDA immunizes "provider[s] or user[s] of an interactive computer service" from being held liable "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see also Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021). The question here is whether Plaintiffs' claims (as discussed by the Court herein) seek to hold Snap liable as a publisher or speaker of content provided by Joshi. If they do, then the claims are barred by Section 230. The Court concludes, however, that they do not.

To determine whether Plaintiffs' claim seeks to hold Snap liable as a publisher or speaker, courts "focus on whether 'the duty the plaintiff alleges' stems 'from the defendant's status or conduct as a publisher or speaker.'" *Lemmon*, 995 F.3d at 1091 (quoting *Barnes v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 3 of 10 |

*Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009)). In *Lemmon*, the Ninth Circuit evaluated a design defect claim asserted by the parents of teenage boys who died in a car accident, allegedly because they were trying to earn "rewards" from sharing Snaps recorded at greater than one hundred miles per hour. *Id.* at 1089. The plaintiffs argued that Snap's provision of the "Speed Filter," and its failure to disable the filter when users were traveling at high speeds, were defects in Snapchat's design. *Id.* at 1089–90. Although Snap argued that the plaintiffs' claims were barred by Section 230, the court concluded that the duty at issue—"a duty to exercise due care in supplying products that do not present an unreasonable risk of injury or harm to the public"— differed substantially from the duty of a publisher. *Id.* at 1092. The court therefore concluded that the plaintiffs' claims were not barred by Section 230. *Id.* at 1092–93.

As discussed below, Plaintiffs here argue that Snap breached a duty to provide information about Joshi to law enforcement. *See* Opp. at 9–10. As was the case in *Lemmon*, this duty "'has nothing to do with' [Snap's] editing, monitoring, or removing of the content that its users generate through Snapchat." 995 F.3d at 1092 (quoting *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016)). Snap cites no caselaw for the idea that Section 230 bars any claim for harm that simply "flows from" a third party's conduct. Indeed, the Ninth Circuit has repeatedly allowed claims where the injury apparently flowed from third party conduct, so long as the claim did not seek to hold the internet service provider liable as a publisher. *See, e.g.*, *Internet Brands*, 824 F.3d at 851 (Section 230 did not bar claim against internet service provider for failure to warn the plaintiff about "about information it obtained from an outside source about how [the individuals who drugged and raped the plaintiff] targeted and lured victims through [the website]"). Plaintiffs' claims for Snap's failure to respond to requests from law enforcement do not, "at bottom," seek to hold Snap liable for Joshi's content—they are focused squarely on Snap's own conduct.

Certain allegations in Plaintiffs' FAC, as well as certain arguments in their Opposition, hint that Plaintiffs also seek to hold Snap liable for its failure to prevent bullying and harassment on Snapchat, despite statements in Snapchat's terms of service prohibiting such conduct. *See, e.g.*, Opp. at 12. But Section 230 appears to immunize Snap against that type of claim. *See, e.g. Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (no liability for conduct that merely facilitated communications between other users). Plaintiffs appear to disclaim any such theory in their Opposition. *See* Opp. at 13 (Plaintiffs' alleged injuries "are directly traceable to [. . .] Snap's delay in releasing [Joshi]'s identity information"). The Court therefore does not address this theory of liability in discussing Plaintiffs' negligence claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 4 of 10 |

The fact that Snap's actions are not immune under Section 230 does not necessarily mean they were tortious. The Court next addresses Plaintiffs' substantive arguments against dismissal.

**B.    Negligence Claim**

Under California law, a claim of negligence requires: (1) a legal duty of care; (2) a breach of that duty; (3) causation; and (4) damages. *See Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917–18 (1996). Snap argues that Plaintiffs have failed to allege a duty and that even if there is a duty, Plaintiffs have failed to allege any breach of that duty.

   **a.    Damages**

Plaintiffs argue that "damages . . . are for Plaintiffs to prove to the trier of fact," and thus that a lack of damages should not preclude their claims. Opp. at 10; *see also id.* at 13. This is incorrect: while the amount of damages is not at issue in this MTD, Plaintiffs must allege the basic fact of damages as an element of their negligence claim. *See Ladd*, 12 Cal. 4th at 917–18. Snap argues that, because all of Joshi's threats were made before the law enforcement requests for information were even made, Snap's delay in responding to the requests cannot have been the cause of Plaintiffs' injury. But Plaintiffs allege that the delay left Bailey, Kelly, and Wasson "in a state of perpetual fear" until Joshi was apprehended. *See* FAC ¶¶ 91–92, 95–96. These allegations of emotional injury are sufficient for purposes of this MTD.

   **b.    Duty**

Plaintiffs also assert that Snap owed them a duty to disclose information about Joshi to law enforcement "without delay." FAC ¶ 113. Plaintiffs point to several theories for the source of that duty.

First, Plaintiffs argue that Snap's misfeasance affirmatively created the risk of harm to Plaintiffs, and that Snap therefore had a duty to protect them from that harm. *See* Opp. at 9. Under California law, misfeasance (as opposed to nonfeasance) can give rise to a duty where the defendant's misfeasance created the risk of harm to the plaintiff from a third party. *See Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 424 (2022), *review denied* (Aug. 24, 2022) (citing *Weirum v. RKO General, Inc.*, 15 Cal.3d 40, 49 (1975)). But this theory appears to focus on the harm allegedly caused by Joshi, not by Snap, and as discussed above, any such theory is barred by Section 230. Even if it were not barred by Section 230, "[t]he crux of the

Case 2:21-cv-07292-DMG-PD   Document 79   Filed 01/19/24   Page 5 of 10   Page ID #:702

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
|---|---|---|---|
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 5 of 10 |

difference between misfeasance and nonfeasance for purposes of assessing a duty to protect is whether the third-party conduct was a necessary component of the defendant's conduct at issue." *Id.* at 427 (citations omitted). In other words, for Plaintiffs to adequately allege that Snap's misfeasance created the risk of harm caused by Joshi, they would need to allege that Snap somehow *required* Joshi to threaten them. *See id.* (finding no duty under *Weirum* because the plaintiffs had not alleged that their abduction and rape by individuals posing as Uber drivers was "a necessary component of the Uber business model"). Because Plaintiffs have not done so, their "misfeasance" theory fails.

      Second, Plaintiffs contend they had a "special relationship" with Snap that gave rise to a duty to protect them from Joshi. FAC ¶¶ 115–16. Once again, the Court notes that, to the extent the duty identified by Plaintiffs is to prevent Joshi from sending threatening messages, such a claim would be foreclosed by Section 230. But Plaintiffs have also failed to identify a "special relationship" that would give rise to an affirmative duty. "A special relationship between the defendant and the victim is one that gives the victim a right to expect protection from the defendant, while a special relationship between the defendant and the dangerous third party is one that entails an ability to control the third party's conduct." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021) (citations omitted). Examples of special relationships are "[r]elationships between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests." Plaintiffs have not identified a case finding a special relationship between a social media app and its users. *Cf. Dyroff v. Ultimate Software Grp., Inc.*, No. 17-CV-05359-LB, 2017 WL 5665670, at *14 (N.D. Cal. Nov. 26, 2017), *aff'd on other grounds*, 934 F.3d 1093 (collecting cases finding no special relationship between websites and their users and noting potential policy risks of such a finding). Plaintiffs fail to plead any facts demonstrating how their relationship with Snap made them particularly vulnerable such that they had a right to expect protection from Snap. The Court therefore concludes that no special relationship between Plaintiffs and Snap gave rise to a duty of care.

      Finally, Plaintiffs argue that Snap affirmatively committed in its 2018 Law Enforcement Guide to disclose user information in response to search warrants and subpoenas. *See* FAC at ¶¶ 117-125; *see also id.*, Ex. 1 [Doc. # 67-1]. But Plaintiffs do not allege that the Law Enforcement Guide contained any provision obligating Defendant to respond to law enforcement requests within a specified timeframe, let alone immediately. *See also* First MTD Order at 8 (holding same). Perhaps more importantly, the Law Enforcement Guide is plainly directed at law enforcement, not at Snapchat users. *See, e.g.*, Law Enforcement Guide at 4 ("This guide provides information for law enforcement officials seeking records from Snap.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 6 of 10 |

Even if the Guide created a duty for Snap to respond to law enforcement officers within some reasonable period of time, the Court is not persuaded that Snap had a duty to Plaintiffs to do so.

To the extent Plaintiffs contend the SCA imports a duty to respond "without delay" into the Law Enforcement Guide, the Court disagrees. As discussed in greater detail *infra*, the SCA prohibits electronic communication service providers from knowingly disclosing "the contents of a communication" "to any person or entity," and from disclosing "a record or other information pertaining to a subscriber" to any governmental entity. 18 U.S.C. § 2702(a). But there are exceptions. Relevant here, the SCA permits a service provider to *voluntarily* disclose communications and customer records "to governmental entit[ies], if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of [communications or information] relating to the emergency." *See id.* at §§ 2702(b)(8), (c)(4). In other words, the SCA *allows* electronic communication service providers to respond "without delay" based on a good faith belief that there is an emergency. It does not *require* a response without delay.

The Court concludes that Plaintiffs have failed to allege the existence of a duty. Accordingly, the MTD as to claim 1 is **GRANTED**.

C.     **Violation of the SCA**

Plaintiffs also allege that Snap violated the SCA. FAC at ¶ 137. But Snap argues that the SCA creates no affirmative duties and no private right of action.

As already discussed, by its plain terms, the subdivision of the SCA upon which Plaintiffs rely does not *require* Snap to do anything, but affords Snap the *discretion* to disclose information in the case of an emergency. *See* 18 U.S.C. §§ 2707(b) (although disclosure of the contents of communications is generally prohibited, a provider "may divulge" the contents under specified circumstances), 2702(c) (likewise, a provider "may divulge" a record or other information pertaining to a subscriber under specified circumstances, although it is generally prohibited). Plaintiffs argue, though, that the "structure and purpose of the statute" reveals that the statute in fact commands such disclosure in case of emergencies. Opp. at 14 (citing *U.S. v. Rodgers*, 461 U.S. 677, 706 (1983)).

The Court disagrees. Plaintiffs do not explain exactly what about the structure and purpose of the statute would indicate that the word "may" should be interpreted as mandatory and not permissive in this context. In fact, the structure and purpose of the statute appears to be to protect against disclosure of such information, but also to provide certain exceptions to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 7 of 10 |

allow (but, again, not to require) providers to cooperate with law enforcement. In *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012), another district court in California granted a motion to quash a civil subpoena on that basis that even with the consent of the user, an electronic communication service provider could not be compelled to produce a user's communications under the statute. Thus, although section 2707 creates a private right of action for persons "aggrieved by" a violation of the statute, where the violation was performed with a knowing or intentional state of mind, 18 U.S.C. § 2707(a), Plaintiffs have not identified a provision of the statute that Snap has violated.[3]

Accordingly, the MTD as to claim 2 is **GRANTED**.

**D.    UCL, FAL, and CLRA Claims**

    **1.  Economic Injury**

Snap argues that Plaintiffs lack standing to assert their CLRA, FAL, and UCL claims because they have not suffered any economic injury. MTD at 19-20. Private individuals must show they have "suffered injury in fact" and "lost money or property as a result of the unfair competition" to establish standing under the UCL or the FAL. Cal. Bus. & Prof. Code §§ 17204, 17535; *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320–21 (2011). The CLRA permits "any consumer" who suffers "any damage" to bring a claim for violation of the act. *See* Cal. Civ. Code § 1780(a); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). Establishing standing under the UCL or FAL establishes standing under the CLRA. *Hinojos*, 718 F.3d at 1108. "There are 'innumerable ways' that a consumer can show economic injury from unfair competition." *Id.* at 1104 (citing *Kwikset*, 51 Cal. 4th at 323. For example, a plaintiff who is "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary," may show economic injury. *Kwikset*, 51 Cal. 4th at 323. The amount of money lost need only be an "identifiable trifle," just enough to show injury in fact. *Id.* at 324–25 (citations omitted).

---

[3] Section 2703(c)(2) may plausibly impose an affirmative obligation on electronic communication service providers to disclose certain information to governmental entities under particular circumstances. *See* 18 U.S.C. § 2703(c)(2) ("A provider of electronic communication service or remote computing service shall disclose [specified information] to a governmental entity . . . when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1)."). There is no contention here that a private individual could assert a claim for violation of this subsection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
|---|---|---|---|
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 8 of 10 |

Plaintiffs contend that they suffered economic harm by allowing Snap to place ads targeting them on Snapchat. *See* FAC ¶¶ 24, 54 (noting that Snap's terms and services state that "[i]n consideration for Snap Inc. letting you access and use the services, You agree that we, our affiliates, and our third-party partners may place advertising on the Services."). Other district courts in this circuit have found an economic injury based on a similar theory, the collection of browsing data, but only where the plaintiffs had specifically alleged (a) that users' "'information and attention' has a cash value, which can be approximated" by reference to objective measures, and (b) that specific, identified companies "have been willing to pay users for information and attention." *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022); *cf. Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1094 (C.D. Cal. 2015) (plaintiff could not establish economic injury based on new subscription fees associated with unlimited use of app because he "did not part with any money" when he downloaded the app itself, and the company still did not charge for the basic version). But Plaintiffs have not made such allegations here.

Plaintiffs also argue that money they expended in pursuit of Joshi and treatment for their injuries constitute economic injury. Opp. at 15. These apparently include "travel costs engaging various law enforcement agencies, legal counsel, and disruption of the daily routines of Plaintiffs," and "the costs associated with the claimed injuries." *Id.* Plaintiffs' FAC does not include allegations that Plaintiffs incurred these costs. And numerous district courts in this circuit have concluded that the cost of filing a UCL suit does not constitute economic injury— otherwise, "a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit." *Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011); *see also Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017) (collecting cases). Still, other expenses allegedly caused by Snap's delay could possibly constitute economic injury. *See, e.g., C.L. v. Del Amo Hosp., Inc.*, No. SA CV 18-0475-DOC (DFMx), 2018 WL 11347329, at *8 (C.D. Cal. Aug. 20, 2018) (paying to board service dog and for additional training after dog regressed due to break in performance of functions constituted economic harm based on allegedly unfair practice of disallowing patients to be admitted with a service dog).

### 2. "Consumer" Definition

Snap also argues that Plaintiffs are not "consumers" within the meaning of CLRA because they did not "purchase" Snap's services. A "consumer" is "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Plaintiffs have cited no authority for the idea that exchanging personally identifiable information for use of a free social networking application

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
|---|---|---|---|
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | | Page 9 of 10 |

constitutes a "purchase" or "lease" under the CLRA, and other courts already have rejected this idea. *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011) (no standing under the CLRA because the plaintiff's use of a free social media application did not make the plaintiff a "consumer").

Accordingly, the Court **GRANTS** Snap's MTD as to the UCL, FAL, and CLRA claims, for failure to adequately allege standing.

E. **Negligent and Intentional Misrepresentation**

Claims of negligent misrepresentation and intentional misrepresentation require an allegation that the defendant made a false statement of material fact. *See Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091 (C.D. Cal. 2017). Snap contends that Plaintiffs cannot identify such a false statement.

Plaintiffs point to Snap's (a) "zero tolerance" bullying and harassment policy and (b) representation that it can "verify [users'] identity and prevent fraud or other unauthorized or illegal activity" as misrepresentations. *See* Opp. at 22; *see also* FAC ¶¶ 108, 105. But any recovery based on these misrepresentations would go beyond the scope of what Plaintiffs have identified as the basis of their claim—*i.e.*, Snap's failure to timely respond to the request for Joshi's information—and would effectively hold Snap liable for Joshi's actions. As discussed above, such a claim would be barred by Section 230.

Plaintiffs also contend that Snap's representation that it had an emergency law enforcement phone number was a misrepresentation, because the number was inoperable at the time the University Police attempted to use it. This theory of Plaintiffs' case is not barred by Section 230. Still, this theory also fails, because it is readily apparent from Plaintiffs' FAC that this was not misrepresented. Plaintiffs allege that, on January 10, 2019, the University Police attempted to call an emergency law enforcement number that was "advertised" by Snap in its Law Enforcement Guide. FAC ¶ 69. Yet, the emergency number to which Plaintiffs point is not contained in the 2018 Law Enforcement Guide they admit was operative at the time the events at issue in this case occurred, and to which they point as a source of Snap's duty. Instead, it appears in an earlier version of the guide. *Compare* FAC, Ex. 1 (2018 version) *with id.*, Ex. 9 (2016 version) [Doc. # 67-9]. The 2016 version clearly and conspicuously directs users to "download the most recent version," with a link. 2016 Law Enforcement Guide at 1. The 2018 Law Enforcement Guide does not include a phone number, but an online emergency form. *See* 2018 Law Enforcement Guide at 1. If the University Police erroneously relied on an outdated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-7292-DMG (PDx) | Date | January 19, 2024 |
|---|---|---|---|
| Title | *Bailey Ziencik, et al. v. Snap, Inc.* | Page | 10 of 10 |

version of the Guide, that does not constitute an affirmative misrepresentation *by Snap* for which Snap can reasonably be held liable.

Accordingly, the MTD as to Plaintiffs' claim 4 is **GRANTED**.

## IV.
## CONCLUSION

In light of the foregoing, the Court **GRANTS** Snap's MTD. Because the Court already has provided Plaintiffs with an opportunity to amend their claims to no avail, Plaintiffs' UCL, FAL, and CLRA claims are **DISMISSED without prejudice and without leave to amend** for lack of standing and all remaining claims are **DISMISSED with prejudice**.

**IT IS SO ORDERED**.